IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| LISA W.,<br><br>    Plaintiff,<br><br>v.<br><br>FRANK BISIGNANO, Commissioner of Social Security,<br><br>    Defendant. | MEMORANDUM DECISION AND ORDER<br><br><br>Case No. 4:25-cv-00050-PK<br><br>Magistrate Judge Paul Kohler |

This matter comes before the Court on Plaintiff's appeal from the decision of the Social Security Administration denying her application for disability insurance benefits and supplemental security benefits.[1] The Court affirms the administrative ruling.

I. STANDARD OF REVIEW

This Court's review of the administrative law judge's ("ALJ") decision is limited to determining whether the findings are supported by substantial evidence and whether the correct legal standards were applied.[2] "Substantial evidence 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"[3] The ALJ is required to consider all of the evidence, although the ALJ is not required to discuss all of the evidence.[4] If supported by substantial evidence, the Commissioner's findings are conclusive and must be

---

[1] Docket No. 11, filed July 10, 2025.

[2] *Rutledge v. Apfel*, 230 F.3d 1172, 1174 (10th Cir. 2000).

[3] *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

[4] *Id.* at 1009–10.

1

affirmed.[5] The Court must evaluate the record as a whole, including the evidence before the ALJ that detracts from the weight of the ALJ's decision.[6] However, the reviewing court should not re-weigh the evidence or substitute its judgment for that of the Commissioner.[7]

## II. BACKGROUND

### A. PROCEDURAL HISTORY

On April 19, 2022, Plaintiff applied for disability insurance benefits and on June 23, 2022, for supplemental security income benefits, both alleging disability beginning on March 30, 2018.[8] The claim was denied initially and on reconsideration.[9] Plaintiff then requested a hearing before an ALJ,[10] which was held on January 18, 2024.[11] On February 15, 2024, the ALJ found that Plaintiff was not disabled.[12] The Appeals Council denied review on February 26, 2025,[13] making the ALJ's decision the Commissioner's final decision for purposes of judicial review.[14]

On April 18, 2025, Plaintiff filed her complaint in this case.[15] On April 23, 2025, both parties consented to a United States Magistrate Judge conducting all proceedings in the case, including entry of final judgment, with appeal to the United States Court of Appeals for the

---

[5] *Richardson*, 402 U.S. at 390.

[6] *Shepherd v. Apfel*, 184 F.3d 1196, 1199 (10th Cir. 1999).

[7] *Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir. 2000).

[8] R. at 223–35.

[9] *Id*. at 75–94, 105–14.

[10] *Id*. at 139–40.

[11] *Id.* at 47–74.

[12] *Id.* at 15–34.

[13] *Id.* at 1–7.

[14] 20 C.F.R. §§ 416.1481, 422.210(a).

[15] Docket No. 1.

Tenth Circuit.[16] The Commissioner filed an answer and the administrative record on June 11, 2025.[17]

Plaintiff filed her Opening Brief on July 10, 2025.[18] The Commissioner's Answer Brief was filed on July 29, 2025.[19] Plaintiff filed her Reply Brief on August 6, 2025.[20]

B.      MEDICAL RECORD EVIDENCE

Plaintiff sought benefits, claiming spinal malformation, right shoulder pain and weakness, GERD, sleep apnea, obesity, brain fog, diverticulitis, thoracic disc degeneration, chronic foot pain with bilateral stress fractures, and cervical spine spasms with loss of normal lordosis.[21] In 2017, Plaintiff received treatment for injuring her right shoulder at work,[22] including attending physical therapy.[23] At a follow up appointment in September 2017, Plaintiff's shoulder had full, pain-free range of motion.[24]

In February 2018, x-rays of Plaintiff's thoracic spine showed mild mid-thoracic degenerative disc disease and lower thoracic levocurvature.[25] In March, Plaintiff exhibited no pain and full strength with resisted shoulder abduction, had no tenderness in the thoracic spine,

---

[16] Docket No. 8.
[17] Docket No. 10.
[18] Docket No. 11.
[19] Docket No. 13.
[20] Docket No. 14.
[21] R. at 253.
[22] *Id*. at 757–68.
[23] *Id*. at 657–87.
[24] *Id*. at 763.
[25] *Id*. at 353.

and mild tenderness in the paraspinal region.[26] Plaintiff was recommended to physical therapy for her back and foot pain,[27] and Plaintiff subsequently attended physical therapy for a few months in 2018.[28] Plaintiff continuously reported back pain, generally moderate in severity.[29] A scoliosis survey revealed mild scoliosis and degenerative changes,[30] and MRI imaging of Plaintiff's thoracic spine showed degenerative findings involving the mid T-spine but no bony abnormality, focal subluxation, or cord edema.[31]

In 2019, Plaintiff continued to complain of thoracic back pain, as well as right shoulder pain.[32] Plaintiff was also seen for anxiety.[33] Plaintiff reported that steroid injections improved her symptoms,[34] and she was taking turmeric, Motrin, and Prilosec.[35]

In 2020, Plaintiff reported increasing back pain.[36] Plaintiff's gait was reported to be normal, and Plaintiff exhibited some tenderness with palpation of the bilateral parathoracic.[37] Plaintiff received trigger point injections for her back pain,[38] and Plaintiff's pain management

---

[26] *Id.* at 378–79.
[27] *Id.*
[28] *Id.* at 623–56.
[29] *Id.* at 445–54, 427–35, 420–26.
[30] *Id.* at 621–22.
[31] *Id.* at 607–09.
[32] *Id.* at 727–29, 734–46.
[33] *Id.* at 727–29.
[34] *Id.* at 728.
[35] *Id.* at 734–36.
[36] *Id.* at 730–37.
[37] *Id.* at 730–37, 412–19.
[38] *Id.* at 406–11.

providers prescribed conservative measures.[39] Plaintiff reported anxiety,[40] as well as excessive weight gain.[41] Upon examination in September 2020, thoracic paraspinal muscle spasms were noted, and Plaintiff had decreased range of motion of the upper spine.[42]

In 2021, shoulder imaging revealed normal bone density and no evidence of acute bony pathology; lumbar spine imaging revealed mild disc height loss and spondylosis at L4-L5; and thoracic spine imaging revealed decreased bone density and levoscoliosis at T10-T11.[43]

Plaintiff was examined by Mark Peterson, DO.[44] Dr. Peterson noted that Plaintiff appeared comfortable while seated and had minimal pain mannerisms; arose spontaneously and unaided from a seated position; was mildly uncomfortable getting on and off the examination table; and mobilized unaided throughout the exam.[45] Dr. Peterson also noted that Plaintiff had an antalgic gait and used a cane during the exam.[46] Plaintiff's Romberg test was positive, and she exhibited lumbar and thoracic tenderness; however, Plaintiff had 4/5 strength in her upper extremities and 5/5 in the lower extremities.[47]

---

[39] *Id*. at 388–405.
[40] *Id*. at 723–25.
[41] *Id*. at 720–22.
[42] *Id*. at 717–19.
[43] *Id*. at 457–60.
[44] *Id*. at 461–68.
[45] *Id*. at 463.
[46] *Id*. at 464.
[47] *Id*. at 464–65.

In 2022, Plaintiff exhibited normal range of motion and normal strength with no tenderness.[48] Plaintiff visited a rheumatologist, and it was noted that Plaintiff had mildly tender muscle groups throughout.[49]

In 2023, Plaintiff received treatment for anxiety, depression, and ADHD and showed some improvement with medication.[50] She also continued to receive treatment for her chronic pain. Plaintiff continued to show a normal range of motion and normal strength with no tenderness.[51] Plaintiff reported that she was reluctant to do or try therapies recommended by her pain management providers and that she hadn't gotten any of the required x-rays because she didn't want to.[52]

C.   HEARING TESTIMONY

Before the ALJ, Plaintiff testified that she lives with her two sons and has a daughter living nearby.[53] Her children help her with household chores, and her daughter takes her places.[54] However, Plaintiff can drive and drove herself to California to visit friends and family sometime during the year before the hearing.[55] She described that she spends her day doing

---

[48] *Id*. at 706–09, 699–702.

[49] *Id*. at 853–65.

[50] *Id*. at 874–77, 936–58, 983–85, 979–81, 969–71, 927–35, 966–68, 963–65, 960–62.

[51] *Id*. at 874–77, 910–15.

[52] *Id*. at 910–15.

[53] *Id*. at 60.

[54] *Id*.

[55] *Id*. at 59.

things that need to get done—she also paints, plays video games, reads, and does genealogy work online.[56] She obtained her GED after she was injured at work.[57]

Plaintiff testified that she has a hard time doing everything because she gets distracted easily and has a hard time focusing.[58] She does not regularly take any pain medications but rather takes turmeric to help with inflammation.[59] She also uses creams, a microcurrent machine, lidocaine patches, and cold packs to manage her pain.[60] Plaintiff uses a cane most of the time and testified that she falls about every six months.[61]

D.   THE ALJ'S DECISION

The ALJ followed the five-step sequential evaluation process in deciding Plaintiff's claim. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since March 30, 2018, the alleged onset date.[62] At step two, the ALJ found that Plaintiff suffered from the following severe impairments: degenerative disc disease of the thoracic and lumbar spines; impingement of the right shoulder; obstructive sleep apnea; chronic pain disorder; obesity; depressive disorder; anxiety disorder; and attention hyperactivity deficit disorder.[63] At step three, the ALJ determined that Plaintiff did not meet or equal a listed impairment.[64] At step

---

[56] *Id*. at 61.
[57] *Id*. at 56.
[58] *Id*. at 57.
[59] *Id*. at 61–62.
[60] *Id*. at 62.
[61] *Id*. at 63.
[62] *Id.* at 20.
[63] *Id.* at 21.
[64] *Id.* at 21–23.

7

four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work with certain limitations.[65] Then, the ALJ concluded that Plaintiff was unable to perform any past relevant work.[66] At step five, the ALJ found that there were jobs that exist in significant numbers that Plaintiff could perform and, therefore, she was not disabled.[67]

### III. DISCUSSION

Plaintiff raises a single issue in her brief: whether the ALJ erred in evaluating the medical opinion evidence provided by Mark Peterson, DO.

An ALJ is not required to defer to or give any specific weight to medical opinions or prior administrative medical findings.[68] Rather, the ALJ must articulate "how persuasive [he or she] find[s] all of the medical opinions and all of the prior administrative medical findings in [the] case record."[69] The ALJ determines persuasiveness using the criteria in 20 C.F.R. § 404.1520c(c): (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors tending to support or contradict a medical opinion or prior administrative medical finding. The most important criteria for determining persuasiveness are supportability and consistency.[70]

The ALJ must explain how he or she considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings, but is

---

[65] *Id.* at 23–27.
[66] *Id.* at 27.
[67] *Id.* at 27–28.
[68] 20 C.F.R. § 404.1520c(a).
[69] *Id.* § 404.1520c(b).
[70] *Id.* § 404.1520c(a), (b)(2).

generally not required to explain how he or she considered other factors.[71] The supportability factor addresses how closely connected a medical opinion is to the objective medical evidence and supporting explanations the medical source presents: "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s)[,] . . . the more persuasive the medical opinions . . . will be."[72] The consistency factor, on the other hand, compares the medical opinion to evidence from other sources: "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be."[73] Although the relevant regulations "do not prescribe the depth at which the ALJ must discuss those factors, [the ALJ] must provide sufficient specificity to enable the reviewing court to decide whether the determination is supported by substantial evidence." [74]

Dr. Peterson completed an Independent Medical Examination on January 30, 2021.[75] In the Functional Assessment, Dr. Peterson opined that Plaintiff should be able to sit, stand, and walk for two to four hours respectively out of a normal eight-hour workday. He also opined that Plaintiff should be able to lift and carry five pounds frequently and ten pounds occasionally; that bending, stooping, squatting, crouching, and/or crawling activities would never be feasible; that Plaintiff should never perform manipulative movements with her right hand and only

---

[71] *Id*. § 404.1520c(b)(2).

[72] *Id.* § 404.1520c(c)(1).

[73] *Id*. § 404.1520c(c)(2).

[74] *Harp v. Kijakazi*, No. CV 1:21-0275 KRS, 2022 WL 2341740, at *6 (D.N.M. June 29, 2022) (internal citation and quotation marks omitted).

[75] R. at 461–68.

occasionally with her left; and that Plaintiff should use a cane continuously. The ALJ found Dr. Peterson's opinions unpersuasive. Addressing the supportability factor, the ALJ explained that Dr. Peterson's assessment was "not supported by his own examination findings, which did reveal positive findings, but not to the extent that would support such extreme limitations."[76] Then, addressing the consistency factor, the ALJ explained that Dr. Peterson's assessment was not consistent "with the overall record such as the limited findings on the imaging studies taken at the time of examination. Particularly, the extreme exertional and postural limitations [were] not supported by [Plaintiff's] limited and conservative treatment."[77]

Plaintiff contends that the ALJ inadequately articulated the supportability and consistency factors. Regarding supportability, Plaintiff takes issue with the ALJ's characterizing the limitations Dr. Peterson assessed as extreme, arguing that the limitations are not extreme because Dr. Peterson did not opine that Plaintiff has no capacity to work but rather has a reduced capacity. This argument holds no weight. The limitations Dr. Peterson assessed are extensive such that it was not unreasonable to characterize them as extreme—Dr. Peterson, for example, opined that Plaintiff should never perform manipulative actions with her right hand.

Plaintiff also argues that the ALJ failed to adequately articulate the supportability factor because, as Plaintiff asserts, the ALJ made no attempt to assess Dr. Peterson's supporting explanations and the ALJ failed to explain why Dr. Peterson's findings were not sufficiently extensive to warrant the opined limitations. The Court disagrees. Although the ALJ could have gone into more depth in his explanation, a complete review of the ALJ's decision supports that

---

[76] *Id*. at 26.

[77] *Id*. (citation omitted)

the ALJ engaged in the necessary analysis.[78] The ALJ discussed that Dr. Peterson diagnosed Plaintiff with lumbar degenerative disc disease, thoracic degenerative disc disease, chronic right shoulder pain, rotator cuff tear/sprain, biceps strain/tear, and shoulder impingement.[79] The ALJ noted that Plaintiff "had a positive straight leg raise test, lumbar and thoracic tenderness, 4/5 strength in the bilateral upper extremities, and abnormal shoulder range of motion,"[80] findings that, though positive, do not necessarily align with Dr. Peterson's extreme opinions. As Plaintiff concedes, Dr. Peterson's supporting explanations pointed to the findings made in his clinical examination, and the ALJ explained that those findings were not so severe as to support such marked limitations. While it may be possible that Dr. Peterson's findings could be interpreted differently, the Court cannot reweigh the evidence, and nothing in Dr. Peterson's assessment suggests that the ALJ's conclusion was unreasonable.

Regarding consistency, Plaintiff first argues that the ALJ should not have considered the imaging studies taken on the same day as Dr. Peterson's assessment in determining the consistency of the opinions because, according to Plaintiff, the images were Dr. Peterson's own imaging studies rather than other evidence. This, however, mischaracterizes the record. The images were assessed by Dr. Dittrich, not Dr. Peterson, and thus it was appropriate for the ALJ to consider them in examining the consistency factor. Moreover, as the ALJ discussed, the bilateral shoulder x-ray was normal, and the x-rays of the spine showed only mild disc height

---

[78] So long as the court can "trace the path of the adjudicator's reasoning," the ALJ has met the articulation requirements. *Nielsen v. Comm'r, SSA*, No. 21-4136, 2022 WL 15570650, at *5 (10th Cir. Oct. 28, 2022) (quoting Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5858 (Jan. 18, 2017)).

[79] R. at 24.

[80] *Id.*

loss and spondylosis L4-L5 of the lumbar spine and kyphoscoliosis of the lower thoracic spine.[81] These relatively limited findings lend credence to the conclusion that Dr. Peterson's extreme opinions were not consistent with the record.

Plaintiff also argues that the ALJ failed to mention objective medical findings and supportive opinions from other medical sources and that the ALJ failed to cite any medical source inconsistent with Dr. Peterson's opinions. This is an inaccurate representation of the ALJ's opinion. The ALJ reviewed Plaintiff's medical evidence, including opinions from other medical sources.[82] In doing so, the ALJ discussed mild and normal imaging results and generally normal physical examination findings.[83] The ALJ also discussed that Plaintiff did not take medication as prescribed, was reluctant to do therapies recommended by pain management, and declined further x-rays.[84] This discussion is consistent with the medical record, which generally consists of conservative treatment, unremarkable physical examination findings, and reports of mild to moderate pain. Additionally, the ALJ discussed and found the state agency medical consultants' opinions, which were far less severe than Dr. Peterson's, generally persuasive.[85] The ALJ's recitation thus supports his conclusion regarding the inconsistency of Dr. Peterson's opinions.

In sum, the ALJ provided adequate explanations, supported by substantial evidence, as to the persuasiveness of Dr. Peterson's assessment.

---

[81] *Id*.

[82] *Id*. at 23–27.

[83] *Id*. at 23–26.

[84] *Id*. at 25.

[85] *Id*. at 26–27.

## IV.  CONCLUSION

Having made a thorough review of the entire record, the Court affirms the Commissioner's decision.

DATED this 14th day of August, 2025.

BY THE COURT:

_____
PAUL KOHLER
United States Magistrate Judge